[No. 2,740.]

## CHARLES DUPOND v. GEORGE BARSTOW ET AL.

CONDITIONS PRECEDENT TO VESTING OF TITLE.—Congress relinquished and granted to the City of San Francisco the right of the United States to certain pueblo lands within its limits, to hold in trust, to dispose of, and convey the same to parties in possession thereof, on such conditions as should be prescribed by the Legislature. One of the conditions prescribed by the Legislature, by which a person in possession, or who had been unlawfully ousted, was to become entitled to the benefit of the Act of Congress, was that, prior to a certain time, all taxes which had been assessed during the five years preceding, shall have been paid: *Held*, that no title vested in one in possession, or who had been ousted from possession, unless he, or some one acting in his behalf, had paid such taxes: *Held*, also, that the same rule prevailed as to the payment of an assessment imposed on the land as a condition precedent to vesting title.

RATIFICATION BY THE LEGISLATURE.—The ratification by the Legislature of an ordinance of a city is equivalent to its reënactment by the Legislature.

IF THERE IS NO BENEFICIARY THE TRUST IS DISCHARGED.—Where land is granted by Congress to a city, in trust, to dispose of and to convey the same to parties in possession thereof, on such conditions as the Legislature shall prescribe, and a condition prescribed is the payment of previous taxes before a certain time, and the person in possession does not make such payment, there is no beneficiary of the trust, and the city acquires the legal title divested of the trust, and may convey the same to any party.

APPEAL from the District Court of the Fifteenth Judicial District, City and County of San Francisco.

The Act of the Legislature of March 14th, 1870, provided for the issuance of deeds by the Mayor of San Francisco, to those who should present a petition with ex parte proofs that they "have been from and including the 8th day of March, 1866, and still are in the possession of" the lands, and have paid the taxes and assessments.

The plaintiff appealed.

The other facts are stated in the opinion.

*Pringle & Pringle* and *G. F. & W. H. Sharp*, for Appellant.

The Act of Congress relinquished the land to the city upon a special trust designating the *cestui que trust*. The trust

was merely ministerial, admitting no discretion in the trustee, but requiring simply a conveyance to the persons designated, operating in fact immediately to the benefit of those designated. (Lewin on Trusts, 701; *Phillips* v. *Garth*, 3 B. C. C. 64; *Rayner* v. *Mowbray*, id. 234.)

Ordinance Eight Hundred, ratified by the Legislature in 1868, was the execution of this trust. It operated as a conveyance by words of present grant, not attempting to divert the course of the title, but specifying only the "terms and conditions" which the Legislature imposed. These "terms and conditions" are all that was left to the discretion of the Legislature. That body had no right to change or to determine the recipients of the Congressional grant. Congress, in making the grant, appointed no tribunal to ascertain the objects of its bounty. Hence, no commission appointed by the Legislature, or by the City of San Francisco, could determine, even prima facie, the persons entitled to take under the Act of Congress. The only possible ascertainment of that fact must be by the ordinary tribunals.

The Legislature could not, in 1870, disturb, modify, or readjust rights which had vested by the first execution of the trust. The Mayor's deed carries no presumption of title, because the title had passed by a preceding Act. If the Legislature of 1870 were competent to act in the premises, this Act of March fourteenth did not legally do so, because it departs, in three essential respects, from the three terms of the trust. It permits the conveyance to those simply "in possession," on March 8th, 1866. This is fatal. Congress had said "in the bona fide possession." But the Act of 1870 says, unqualifiedly, those "in the possession on March 8th, 1866." Precisely by this departure from the Act of Congress the Legislature of 1870 opens the door to these respondents, and closes it to this appellant. It assumes to direct the donation to those who may have forcibly or fraudulently obtained a temporary possession, and precludes

any inquiry into the nature of such possession. It assumes to shut us out, in direct violation of the terms of the grant. Ordinance Eight Hundred carried the title to those who "having been ousted, may recover;" and it is impossible to defeat their recovery by pretensions of title, based upon the trespass which ousted them.

The attempt, on the part of the trustee, to convey to other *cestuis que trust* than those designated by the Act, is not only voidable, but absolutely void. The Act of Congress created a simple trust. (Lewin on Trusts, 21.)

The defective execution of the power made it void, even at law. (Sugden on Powers, 384.)

If there were any doubt on this point, it will disappear when we consider that this trustee could not possibly have capacity to pass the fee, except by a strict execution of the power. The trust was not confided to a natural person, with the ordinary capacity to convey. There is no possibility in this trustee to convey in violation of its trust.

*Williams & Thornton, Eugene Lies,* and *Alexander Campbell,* for Respondents.

The trusts are plainly declared, viz: that the said land, granted by the said Act, shall be disposed of and conveyed by said city to parties in the bona fide possession thereof, by themselves or their tenants, on the passage of the Act (March 8th, 1866), in such quantities, and upon such terms and conditions, as the Legislature of this State may prescribe.

The city could not dispose of or convey the land so granted in trust, or any part of it, without the authorization of the Legislature; and the Legislature was empowered, by said Act of Congress, to prescribe the quantity, as well as the terms and conditions, on which the said land should be conveyed by the city to the bona fide possessor. The Legislature might have limited each grantee to half a block, or a

lot—a single building lot; and it might have required of each grantee to pay one half of the appraised value of the property granted, into the City Treasury.

The eleventh section of Order Eight Hundred is not a grant to the plaintiff, because he was not in the actual possession on the 8th of March, 1866; and if the defendants ousted him, though they were in actual possession on said eighth of March, they were not in bona fide possession, and, therefore, said eleventh section was not a grant to defendants. This being the case, the said eleventh section was not a grant to either party, and the title remained in the city.

Then, there being no grant to either party, the city, under the provisions of the Act of March 14th, 1870, by authority of the Legislature, has granted and conveyed the land in controversy to the defendants. The conveyance so made is a perfect title in the defendants, and the plaintiff could then no more recover against defendants than against the city; for certainly on his prior possession he could not recover against the city, therefore he could not against defendants.

The Act of 1870 provides that a deed shall be made to the defendants, on their complying with certain terms. These terms, as shown by the statement in the cause, were complied with by them. The plaintiff paid nothing, and did nothing. It is not even pretended that he did. He claims to recover on the payments made by defendants.


By the Court, CROCKETT, J.:

The action is in the usual form to recover the possession of a tract of land within the corporate limits of the City and County of San Francisco; and the plaintiff claims to have acquired the title in virtue of the provisions of the Act of

Congress of March 8th, 1866, entitled "An Act to quiet the title to certain lands within the corporate limits of the City of San Francisco" (14 Stats. at Large, 4), and of a certain ordinance, numbered eight hundred, afterwards passed by the Board of Supervisors of said city and county, which was ratified by the Act of the Legislature of March 27th, 1868. (Stats. 1867–8, p. 379.) The defendants also claim title derived from the same source, and through the Act of the Legislature of March 14th, 1870. (Stats. 1869–70, p. 353.) By the Act of March 8th, 1866, Congress relinquished and granted to the City of San Francisco all the right and title of the United States in and to certain lands therein described (which include the premises in controversy), in trust that said land "shall be disposed of and conveyed by said city to parties in the bona fide actual possession thereof, by themselves or tenants, on the passage of this Act, in such quantities and on such terms and conditions as the Legislature of the State of California may prescribe." On the 14th of January, 1868, the Board of Supervisors adopted an order inaugurating a plan or system for carrying into execution the above recited Act of Congress. After providing a plan for the subdivision of the land into blocks and lots, the location of streets, and the reservation of certain portions for parks and other public uses, it provides for an appraisal of the lands so reserved and for an assessment on the remaining lands sufficient to pay the appraised value of the lands reserved. Section eleven then provides as follows:

" Upon the payment to the County Treasurer of the City and County of San Francisco of the amount assessed by the committee provided for in section thirteen of this order, upon the lands as provided for in section ten of this order, the City and County of San Francisco hereby relinquishes and grants all the right, title, and claim which the said city and county now has or may hereafter acquire as the suc-

cessor of the Pueblo of San Francisco, or as the grantee or the patentee of the United States, in and to the lands hereinbefore in this order described, and not excepted or reserved, or intended to be excepted or reserved by any of the preceding sections or provisions of this order, and which may not be set apart for public use under any of the preceding sections and provisions, and upon which shall be paid, previous to the 1st day of April, 1868, all taxes which have been assessed thereon during the five fiscal years preceding the year beginning July 1st, 1866, unto the person or to the heirs and assigns of persons, who were, on the 8th day of March, 1866, in the actual bona fide possession thereof, by themselves or their tenants, or having been ousted from such possession before or since said day, have recovered or may recover the same by legal process. And it is hereby declared to be the intent and object of this section to pass the right, title, and claim of the said city and county in and to every tract or portion of said land delineated on said map, except the portions that are or may be reserved as aforesaid, possessed by one person, unto the possessor thereof, in severalty; and every separate tract or portion thereof, except the portions that are or may be reserved as aforesaid, possessed by more than one person, jointly or in common, unto the possessors thereof, jointly or in common."

One of the conditions prescribed by this section, on which a person in possession, or who has been unlawfully ousted, was to become entitled to the benefit of the Act of Congress, was that "previous to the 1st day of April, 1868, all taxes which have been assessed thereon (the land) during the five fiscal years preceding the year beginning July 1st, 1866," shall have been paid. This provision does not, in terms, require that the taxes shall have been paid by or on behalf of the person in possession, or who had been ousted under such circumstances as to entitle him to recover the

possession by legal process.    But such was plainly the inten-
tion of the Board of Supervisors in framing the order.    It
was not their purpose to bestow the title on those who re-
fused or neglected to pay the taxes within the time limited.
On the contrary, it was obviously intended that the payment
of the taxes by the claimant, or by his predecessors in inter-
est, or by some one acting for or on his or their behalf, should
be a condition precedent, without the performance of which
the title would not pass.    The same rule will apply to the
payment of the assessment, which is also made a condition
precedent to the vesting of the title.

This order was ratified and confirmed by the Act of
March 27th, 1868, and the plaintiff claims that under its
provisions the title vested in him immediately on the passage
of the last named Act, inasmuch as he had been in the
actual possession from 1853 to 1862, when he was unlawfully
ousted by the defendants, from whom he was entitled to
recover the possession by legal process.    But, as we have
seen, the payment of the taxes and assessment, as required
by the order, was a condition precedent, without the per-
formance of which the title, by the very terms of the order,
did not vest, and it does not appear that the plaintiff, or any
one on his behalf, either paid or offered to pay the taxes.
The Act of Congress, in express terms, conferred upon the
Legislature the right to prescribe "the terms and condi-
tions" on which the title should pass to the beneficiaries,
and the quantity of land to which each should be entitled.
The Legislature partially performed this duty, by ratifying
and confirming Order No. 800; and there can be no doubt
that the order thereby became, to all intents and purposes,
as definitively valid as though its provisions had been re-
enacted by the Legislature.    Not having paid the taxes or
the assessment, as provided in section eleven, the plaintiff
has not performed the condition on which his rights as a
beneficiary were made to depend.    Congress saw fit to con-

fide to the Legislature the unqualified right to determine
the "terms and conditions" on which persons in the actual
bona fide possession on the 8th of March, 1866, should be-
come entitled to the bounty of the Government; and in the
legitimate exercise of this power, the Legislature has pre-
scribed as one of the conditions to be performed, by or on
behalf of the person claiming the benefit of the Act, the
payment of certain assessments and taxes. Not having per-
formed this condition, the plaintiff is not within the category
of those who are entitled to the benefit of the statute. If
it be conceded, therefore, that Order No. 800, when ratified
by the Act of March 27th, 1868, operated *proprio vigore* as
a grant and conveyance, *in presenti,* of the legal title to those
entitled to it, the plaintiff derived no benefit therefrom,
having failed to comply with its requirements. It results
that he has not acquired the legal title, and for that reason
must fail in this action, unless he is entitled to recover on
the ground of prior possession. It appears in the case that
the defendants, being in the actual possession of the de-
manded premises on the 8th of March, 1866, paid the taxes
and assessments, as required by Order No. 800, and subse-
quently obtained a conveyance in due form from the city,
under and in pursuance of the provisions of the Act of
March 14th, 1870. But the plaintiff contends that this con-
veyance was inoperative and void, because the Act last
mentioned authorizes the conveyance to be made to the
persons who, "by themselves, their tenants, or the persons
through whom they claim or derive possession, have been,
from and including the 8th day of March, Anno Domini
1866, and still are, in the possession," etc. It is said that
this omits the requirement that the possession must have been
bona fide, and that the Legislature had no power to convey
the title to mere trespassers, or to others than those who
were in the bona fide possession on the 8th of March, 1866;
and that inasmuch as the defendants were wrongfully and

unlawfully in possession, the Legislature had no authority to convey to them a title which the Act of Congress conferred upon the city in trust, that it should be conveyed to those only who were in the bona fide possession. Hence it is claimed that the deed is in violation of the trust on which the title was held, and is, therefore, absolutely void. But, as we have already seen, the plaintiff was not, and is not now, so far as this record shows, entitled to a conveyance of the legal title, nor did he acquire it by virtue of Order No. 800, and the Act which ratified it. Whatever rights he might otherwise have asserted, he lost by his failure to pay the taxes and assessments. Neither the plaintiff or any other person, so far as the case shows, were, or are, in the category of those entitled to the benefit of the Act of Congress in respect to the premises in controversy. There was, and is, therefore, no beneficiary under the Act who is entitled to claim its benefits in respect to this land. Nevertheless, the Act of Congress had the effect to vest the legal title in the city; and there being no beneficiary entitled to claim the benefit of the trust, it was competent for the Legislature to direct to whom, and in what manner, and on what conditions, the title should be conveyed. This violated no trust, for the reason that as to this parcel there was no beneficiary; and the city held the title as it held the title to other lands which were free from any trust relation, subject to disposal, as the Legislature should direct. The defendants, therefore, acquired the legal title, which must prevail in an action of this character. I think the judgment was properly entered for the defendants.

Judgment affirmed as of the 14th day of February, A. D. 1871.

Mr. Chief Justice Wallace, being disqualified by reason of interest in the land in controversy, did not participate in the decision.