## A. E. CARTER *v.* T. H. McMANUS et al.

Where the object of a sale of succession property is the payment of debts, citation to the heir, and the advice of a family meeting are not required by law.

Personal citation to the heirs is necessary to render the judgment homologating an administrator's final account binding as between the heirs and the administrator ; but as between the *heirs* and *creditors* of the succession, it has been held that the homologation is binding without *personal* citation or notice, when the notice has been given as required by Art. 1057 of the Civil Code.

The law makes no distinction between the beneficiary heir who is a creditor (although he be the administrator,) and the other creditors ; and the judgment homologating an administrator's account, when the administrator is both heir and creditor, is binding on the other heirs, without personal citation to them.

An application made by the executor named in the will, to have the will probated, is not a judicial admission which would estop the executor from claiming as his own, property disposed of in the will.

APPEAL from the District Court of the Parish of East Feliciana, *Ratliff*, J. *A. M. Dunn* and *Hardesty & Kernan*, for plaintiff and appellant. *Benjamin, Bradford & Finney*, for defendants.

LAND, J. *Samuel* and *Sarah McManus* had issue of their marriage *James, Thomas H.*, and *Rebecca McManus*. *Rebecca* intermarried with *Albert G. Carter*, and died, leaving the plaintiff, *Albert Eugene Carter*, the sole issue of their marriage.

*James McManus*, after making his will, died without issue, in the year 1840. His will was declared null and void, and his father was appointed administrator of his succession. *Samuel McManus* proceeded to the settlement of the affairs of the succession of his son *James*, by causing all the property, land, slaves and

movables, to be sold at a probate sale, for the payment of debts. Soon after the sale of the effects of the succession, *Samuel McManus* rendered a final account of his administration to the Probate Court, and prayed for its homologation after the legal delays. This final account, which showed the succession of *James McManus* to be insolvent, was homologated by the Judge after the legal advertisements and delays, and the administrator was discharged, and his bond canceled.

*Samuel McManus* died in the year 1857, and the plaintiff, who is one of his forced heirs, and also one of the legal heirs of *James McManus*, and who has recently attained the age of majority, instituted this suit against the executors of *Samuel McManus* for the twofold purpose, first, of setting aside and annulling the judgment of homologation, and of annulling and avoiding the probate sale of the land, slaves and movable effects in the succession of *James McManus*, and secondly, of having certain slaves declared the property of the succession of *James McManus*, which were not included in the inventory by the administrator, but which were claimed by him as his own property.

The defendants, in their answer, plead the general denial, *res judicata*, and the prescription of five, ten and fifteen years.

The causes alleged for annulling the probate sale are : that the sale itself was unnecessary, because the succession was not indebted to any one ; that the decree ordering the sale was *ex parte*, without citation or notice to the plaintiff's tutor, who was present in the parish ; and that the sale was made without the previous advice of a family meeting, declaring its necessity, and fixing its terms.

The alleged non-existence of debts due by the succession is not sustained by the evidence, but, on the contrary, is disproved, independently of the decree of the court, by the production of the promissory notes of *James McManus*, which were outstanding and not due at the time of his death. The other alleged causes are true in point of fact, but they are insufficient in law to avoid the probate sale of the property.

Where a succession is administered with the benefit of inventory, as was that of *James McManus*, the person appointed administrator, whether the heir or any other individual, is required to proceed to the sale of the property of the succession on the authorization of the Judge, and after advertisement during the time and in the manner prescribed by law, for the purpose of a final settlement of its affairs. C. C. Arts. 1051, 1055. The law does not require the administrator, on his application for an order to sell the property of the succession, to pay debts, to cite the beneficiary heir to show cause why the decree of the sale should not be granted ; nor does the law require the administrator to cause the convocation of a family meeting to deliberate upon the necessity of the sale for the payment of debts, and to fix the terms of the same, before he can obtain an order for such a purpose from the Judge. When the object of the sale is the payment of debts, citation to the heir and the advice of a family meeting are not required by law, and the absence of them, consequently, cannot affect or impair the validity of the sale.

The causes alleged for annulling the judgment of homologation are, that it was rendered *ex parte*, without citation to the plaintiff's tutor ; that no debts were due by the succession, and that the judgment was a fraud upon the rights of the plaintiff, as heir to the estate of *James McManus*.

As to the first of these grounds, it appears, that when *Samuel McManus* filed his final account or tableau, he gave the notice required by Article 1057 of the

Civil Code, which provides that the Judge, on the demand of the administrator, shall order that the creditors and legatees of the succession be notified to show cause, if any they have, within ten days, why they should not be paid conformably with the authorization solicited by the administrator, or according to the tableau of distribution by him presented. And that, after the advertisement and expiration of the legal delay, the Judge, in pursuance of the requirement of Article 1058 of the Code, homologated the account, and discharged the administrator, but without personal citation to the plaintiff, one of the heirs represented by his tutor.

It has been held, that, as between the heir and the executor, or administrator of an estate, the homologation of the final account is not binding on the heir, without citation or notice ; but it has also been held that, as between *the heir* and *creditors of the succession*, the homologation of the final account is binding and conclusive on the heir, *without personal citation or notice.* This distinction is not made by Articles 1057 and 1058 of the Civil Code under the head " Of the benefit of inventory and the delays for deliberating." But conceding the distinction to be well founded, it cannot be made in this case, because the object of this suit is to destroy the rights of *Samuel McManus, as a creditor* of the succession, and not to make his executors liable in damages for his mal-administration. *Samuel McManus* was one of the beneficiary heirs, and *as a creditor* of the succession of *James McManus,* was placed on a footing of equality with the other creditors, and had a right to be paid, as any other creditor, all debts due him by the deceased. C. C. 1051. And as the law makes no distinction between the beneficiary heir, *who is a creditor,* (although he may be the administrator,) and the other creditors of the succession, the courts can make none, and the judgment of homologation must be held as conclusive in favor of *Samuel McManus,* considered *as a creditor,* as it is in favor of the other creditors of the succession, without personal citation to the heir.

From this view of the case, the plaintiff cannot avoid the judgment of homologation as to *Samuel McManus,* considered as a creditor before the opening of the succession, except on the ground of mistake, error or fraud. And this, the plaintiff seeks to do, by charging his grand-father with fraud, and by specially averring that the debts recognized, in his favor, by the judgment of homologation, were not due from the succession, but were mere fictions or simulations. The burden of proof was on the plaintiff to establish these grave charges of fraud against his ancestor, in the administration of the succession of *James McManus,* but the evidence which he adduced fails to establish the truth of his allegations. On the contrary, the record shows an indebtedness from *James* to *Samuel McManus,* evidenced by the promissory notes of the former, to the amount of $2,500, which was the principal debt against his succession, and recognized by the judgment of homologation. The other items of indebtedness in favor of *Samuel McManus* consisted in matters of account which the Probate Judge believed to be correct, and which the father could legally charge against his son. If there were any legal objections to the allowance of these charges, or of the promissory notes, as debts against the succession, the plaintiff's tutor should have filed an opposition to the homologation of the account, within the delay prescribed by law. And if the plaintiff has been injured by the negligent or bad administration of his tutor, he has his recourse against him for indemnity.

The second purpose of the plaintiff's suit is to have certain slaves, which were not inventoried, declared the property of the succession of *James McManus.*

As stated above, *James McManus* died, leaving a last will and testament. In his will, he disposed of all his property to which his title is not denied, and also of the slaves now in controversy. He appointed his father, *Samuel McManus,* and his brother, *Thomas H. McManus,* his executors, who presented his will to the court, and prayed, in their petition, for its probate. The plaintiff, through his tutor, was cited to show cause why the will should not be probated. His tutor opposed the application of the executors, and for the causes of nullity alleged by him, the will was declared null and void. Thereupon, *Samuel McManus* applied to be appointed administrator of the succession, and, as we have said, was accordingly appointed. In causing an inventory of the property to be made, *Samuel McManus* refused to have included in the same seven of the slaves, which *James McManus* had disposed of in his will as a legacy to his brother *Thomas,* and claimed the slaves to be his own property.

The plaintiff contends, that the application of the executors of *James McManus* to have his will probated, was a judicial admission of his title to the slaves disposed of by his will. And that such admission, without further proof of title in the succession, is sufficient evidence to sustain his action against *the executors individually,* for the recovery of the slaves, as the property of the succession of *James McManus.*

The petition for the probate of the will contains *no express averment* or *declaration,* that the slaves were the property of *James McManus,* and if any such admission can be implied from the mere application to probate the will, it would not be of that *express* and *positive character* required by Article 2270 of the Civil Code, to constitute the judicial confession of the party, by the effect of which he is estopped from asserting and proving the contrary. And besides, it has been considered by this court, that admissions made by an executor or administrator in the course of judicial proceedings, are made for the benefit of the estate represented by him, and do not conclude his individual rights by way of estoppel.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be reversed; and it is now ordered, adjudged and decreed, that there be judgment in favor of defendants, with costs in both courts.

MERRICK, C. J., having been of counsel at the rendition of the judgment sought to be annulled in this action, declined sitting in this case.