[No. 3,586.]

## ROBERT S. RANDALL *v.* ALEXANDER AUSTIN.

OUTSIDE LANDS IN SAN FRANCISCO.—Order Number Eight Hundred, of the Board of Supervisors of the City and County of San Francisco, prescribing the payment of taxes and assessments as a condition upon which persons in possession of outside lands in said city should be entitled to the benefit of the Act of Congress of March 8th, 1866, did not contemplate the payment of taxes and assessments twice on the same land.

IDEM.—It was the intention of said order, that such taxes and assessments should be paid by the person, or his predecessor in interest, who was in possession March 8th, 1866, or had been wrongfully deprived of the possession, and was entitled to recover it. The Act of March 14th, 1870, prescribing the method of proceeding for the possessors to obtain from said city a conveyance of said land entitled to record, which requires contesting claimants each of them to pay to the Tax Collector the taxes and assessments on the land, was intended to enforce a mere deposit of the taxes and assessments, and the unsuccessful party to the litigation has a right to withdraw his deposit.

IDEM.—So long as the Tax Collector retains such taxes and assessments, it is his duty to pay the same to the unsuccessful litigant; and he will not be allowed to set up as a defense that the City and County of San Francisco is the proper party to be sued.

FUND IN HANDS OF PUBLIC OFFICER.—A public officer who holds in his hands a fund which rightfully belongs to a private person, but which the officer ought to have paid into the public treasury, will not be permitted, in an action brought against him by the rightful owner of the fund, to set up as a defense a breach of his official duty in not paying the fund into the treasury.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The Circuit Court of the United States, by a decree entered on the 18th day of May, 1865, confirmed the claim of the City of San Francisco to the pueblo lands. The corporate limits of the City, as defined by the Act of 1851, reincorporating the City, had been subsequently enlarged. Before 1866, the title to the pueblo lands lying within the corporate limits of 1851, had been confirmed to the possessors, and the lands lying beyond the boundaries of 1851, were called the outside lands. The population had spread over these outside lands, and they were occupied in tracts of various sizes. Taxes had been assessed on these outside lands for many years. By the Act of Congress of March 8th, 1866, the claim of the city to these lands was confirmed upon the trust that the same should be conveyed by the city to parties in the bona fide actual possession thereof at the date of the passage of the Act, in such quantities, and upon such terms and conditions as the Legislature of California should prescribe, except such parcels as should be set apart by order of the city for public use. The City and County of San Francisco was the name of the municipal corporation which was the successor of the City of San Francisco; and on the 14th day of January, 1868, the Board of Supervisors of the city and county passed what was called Ordinance Number Eight Hundred, which provided for a survey of the outside lands, and for laying the same out into lots and blocks, and establishing public parks, cemeteries, etc. When any land in the possession of one who was a beneficiary under the Act of Congress, was taken for any public use except a street, the same was to be appraised, and, to pay the owner his damages, an assessment was levied on the land not taken for public use. The ordinance also provided that the "terms and conditions" upon which the city would

part with its interest in the lands to the possessors, were the payment of the amount assessed upon the lands, and all taxes which had been assessed thereon during the five fiscal years preceding the year beginning July 1st, 1866. This assessment, in the language of the ordinance, was "a just and equitable assessment of the value of the lands reserved, ratably and equitably upon and to each piece and parcel of land delineated upon said map, according to the appraised value of said lands." The Legislature of California, on the 27th of March, 1868, ratified and confirmed this ordinance. The subsequent Act of March 14th, 1870, made it the duty of the Tax Collector to collect these assessments.

The other facts are stated in the opinion.

*Jarboe & Harrison*, for Appellant.

The plaintiff's right of action, if he has any, is against the City of San Francisco, and not against the defendant. (*Sadler* v. *Evans*, 4 Burr. 1986; *Bamford* v. *Shuttleworth*, 11 Ad. & E. 926; *Stephens* v. *Babcock*, 3 B. & Ad. 354.)

The moneys were received by the defendant as the Tax Collector of the City and County of San Francisco, and could be disposed of by him only in the manner provided by statute.

Section seventy-eight of the Consolidation Act (Stats. 1856, p. 169,) provides that "the Tax Collector, upon the final settlement to be made by him as such Tax Collector, according to the requirements of the law, shall be charged with, and shall pay into the hands of the Treasurer, the full amount of all taxes by him collected, and not previously paid over, without any deduction of commissions, fees, or otherwise."

After the plaintiff had paid the money into the coffers of the city he could reclaim it only through the action of the city, *i. e.*, by an order from the Board of Supervisors upon the City Treasurer.

The Tax Collector has no authority whatever to pay out the moneys received by him, except to the Treasurer of the city, and any payment that he might make would not be recognized as sufficient to exonerate him from liability for the amount.

The payment having been made by the plaintiff voluntarily, and with a full knowledge of all the facts under which it was made, he cannot recover it back.

"The rule is well settled that moneys voluntarily paid on a claim of right, with full knowledge of the facts, cannot be recovered back merely because the party, at the time of payment, was ignorant of or mistook the law as to his liability." (*Brummagim* v. *Tillinghast,* 18 Cal. 270.)

In that case it was held that the plaintiff could not recover back the moneys paid as taxes for stamps, which were illegally required, and for which he was under no liability to pay.

"If the plaintiffs knew the Act to be unconstitutional, then the case is only an attempt to recover an illegal demand voluntarily paid, knowing it to be illegal at the time, and is not, of course, entitled to any consideration." (*Garrison* v. *Tillinghast,* 18 Cal. 407.)

*N. Bennett,* for Respondent.

The law imposed upon the defendant, under the *descriptio personæ* of Tax Collector of the City and County of San Francisco, the duty of collecting the assessment, and of paying it over to those persons whose lands had been taken for public use. The city had nothing to do with the collection of this assessment, or of paying for the lands taken for public use.

By the provisions of this Act of 1870, a party having possession of a tract of outside lands, after having paid to

the person holding the office of Tax Collector all the assessments and taxes levied upon it, could petition the Board of Supervisors for a deed to the land. But before the city's award or deed was made a third party, who claimed the same land, could protest against the issuance of the deed to the first party, after paying to the Tax Collector the assessments and taxes levied as aforesaid upon said land, the portion so claimed by the party protesting, and producing the Tax Collector's receipt therefor, and a copy of his complaint to the Board of Supervisors. Thus the Tax Collector became a simple trustee or depositary for such duplicate payment till the termination of the suit pending, or until the party protesting was permitted by the Board of Supervisors to withdraw his protest, etc., and the award and deed had been made to another.

The defendant is sued and liable in his individual capacity, and not as Tax Collector.

The defendant does not hold this money in virtue of his office as Tax Collector. Neither he nor his sureties are liable on his official bond as Tax Collector. The defendant holds the money in his individual character. He received it as such, and detains it as such. (*People* v. *Roll*, 38 Cal. 76; *People* v. *Love*, 25 Cal. 520; *People* v. *Edward*, 9 Cal. 286; *Lathrop* v. *Britton*, 30 Cal. 680.)

The money sought to be recovered from the defendant is not held by him as taxes or assessments levied for State or municipal purposes, nor was delivered to him as such; but the same came into his hands in compliance with and in performance of the rules and regulations prescribed by the Legislature, in pursuance of the Act of Congress which authorized the Legislature to appoint the terms and conditions upon which the land should pass to and be held by the occupants thereof, on the 8th of March, 1866. (See Act of Legislature of March 27th, 1868, Stats. 1868, p. 379, adopting Order Eight Hundred; and Act of 1870, Stats. 1869–70,

). 353, which enacted into a law Order Eight Hundred and Sixty-six.)

The plaintiff could not maintain an action against the city for this money.

No action against the city for the money could be maintained by the plaintiff, for the city never received the money and has never had any control over it; so that Mr. Austin was right in saying, when the demand was made upon him and he was informed of the action of the Board of Supervisors, "that he had a right to hold the said moneys both as against the said Board of Supervisors and the said Randall, and that he was not subject to the Board of Supervisors in the premises."

And it is evident that he knew that the city has nothing to do with this money, for, if it belonged to the city, it would have been the duty of Mr. Austin to have paid over, long ago, to the City Treasury this money which has already been in his possession over two years; and his failure so to do would have made him liable criminally.

By the Court, CROCKETT, J. :

Order Number Eight Hundred of the Board of Supervisors of the City and County of San Francisco, which was afterwards ratified by the Act of the Legislature of March 27th, 1868 (Stats. 1867–8, p. 379), prescribed as one of the conditions on which any person should be entitled to the benefit of the Act of Congress of March 8th, 1866 (14 Stats. at Large, p. 4), the payment by the claimant of certain taxes and assessments on the lands claimed. But no provision was made for a conveyance to the claimant of the legal title in such form that it could be made a matter of record. The Act of March 14th, 1870 (Stats. 1869–70, p. 353), was intended to remedy this defect; and prescribed the method of

proceeding, by which the claimant may obtain a conveyance in due form, from the city and county.

By the terms of the Act, the claimant is required to pre-sent to the Board of Supervisors a petitition stating, amongst other matters, that he has paid to the Tax Collector the taxes and assessments on the land already referred to, and if the Board, on hearing the petition and proofs, is satisfied that the claimant is entitled to the land, it shall enter an order awarding it to him. The Board is then to publish a notice of the award; after the due publication of which the Mayor is authorized to execute a conveyance to the claimant; *"pro-vided, however,* that in case a suit shall be pending between the petitioner and some third person, involving the right of possession of the tract, or some portion thereof petitioned for, and such third person shall file with the Clerk of the Board of Supervisors a copy of the complaint filed in said action before the deed shall have been executed and deliv-ered to the petitioner, and also competent proof that such third person, or the person through whom they claim or derive possession, has paid the taxes and assessments men-tioned in the first section of this Act; then, and in that case, the deed shall be withheld until such suit shall be finally determined, and there shall thereafter be executed a deed of conveyance of so much of the tract of land as shall be involved in the said suit to the party in whose favor the said suit shall be finally determined as aforesaid."

It appears from the agreed statement of facts in this case, that on the 21st of April, 1870, Winters and others paid to the Tax Collector all the taxes and assessments on certain lands, in conformity with the foregoing requirements, and presented their petition in due form to the Board of Super-visors, asking that said lands be awarded to them; that the Board proceeded to act on the petition, and before a deed was executed and delivered to the petitioners the plaintiff in this action on the 6th day of May, 1870, paid to the Tax

Collector, in due form, all the taxes and assessments on a portion of the same land, and took his receipt therefor; that the plaintiff thereupon filed with the Clerk of the Board a copy of the complaint in an action then pending, in which the present plaintiff was plaintiff and said Winters and others were defendants, involving the right of possession of said lands, and also filed competent proof that he had paid the taxes as above stated, and protested against the execution of a conveyance to Winters and others; that in September, 1871, the plaintiffs presented a petition to the Board asking leave to withdraw the protest and proofs, and the moneys he had paid for taxes and assessments. The petition was referred to the Committee on Outside Lands, which made a report recommending that the prayer of the petition be granted, which report was approved and adopted, and thereupon the Clerk was directed to return to the plaintiff the protest and Tax Collector's receipts, which was done. The plaintiff then offered to surrender the receipts to the Tax Collector, and informed him of the action of the Board, and demanded a return and repayment of the money paid by the plaintiff for taxes and assessements. This demand was refused, the Tax Collector, "claiming that he had a right to hold the said moneys both as against the said Board of Supervisors and the said Randall—that he was not subject to the Board of Supervisors in the premises."

After the protest and proofs were withdrawn by the plaintiff, the Mayor conveyed the land to Winters and others, and this action is brought to recover from the Tax Collector the moneys paid to him by the plaintiff for taxes and assessments.

A judgment was entered for the plaintiff, from which the defendant appeals.

It is very evident that neither the Board of Supervisors nor the Legislature contemplated the collection of the taxes and assessments twice on the same land; and it is equally

clear that they were intended to be paid by the person or his predecessor in interest who was in possession March 8th, 1866, or had been wrongfully deprived of the possession and was entitled to recover it. (*Dupont* v. *Barton*, 45 Cal. 446.) The proviso in the third section of the Act of March 14th, 1870, which we have quoted, was intended to cover a case in which there was a pending controversy in the Courts in respect to the right of possession, and makes it the duty of the Supervisors to award the title in favor of the successful party to the action.

But, inasmuch as it was doubtful which of them would ultimately prevail, and as the taxes and assessments would be rightfully due from the successful party, and not from his adversary, the statute provides that each of them shall pay the taxes and assessments pending the litigation, in order that the title may be awarded to the proper party when the litigation is ended. Practically it is a mere deposit of the taxes and assessment by each to await the result of the controversy in the Courts, and though it is not expressly provided that the unsuccessful party may withdraw his deposit, we have not the least doubt that such was the intention of the Legislature. It could not have been intended that the taxes and assessments should be twice paid, as we think is perfectly apparent from the whole scope and spirit of the Act.

When it appeared, from the record of the proceedings of the Board, that the controversy was ended, the unsuccessful party was entitled to withdraw his deposit. If the consent of the Board was necessary before he could withdraw the money, the plaintiff in this case obtained it, His petition to that effect was granted, and the Clerk was directed to return his papers, including the Tax Collector's receipts.

This was a sufficient authority to the defendant to refund the money, and would have protected him from further responsibility.

The rule that voluntary payments cannot be recovered back has no application to the case, nor is there any force in the argument that the action should have been brought against the city and county instead of the Tax Collector. The money has never been in the treasury of the city and county; and if it was incumbent on the Tax Collector to place it there, he has not done so; and if it be assumed that it was his duty to pay it into the treasury—a point on which we express no opinion—he is nevertheless responsible to the rightful owner, so long as he improperly retains the money in his hands. He will not be allowed to set up that which would be a breach of his official duty as a defense against an action by the rightful owner of the fund.

Judgment affirmed.