[Nos. 12992 and 13574.  Department Two. — January 3, 1891.]

ADAM S. B. BAKER, RESPONDENT, v. JOHN BRICK-
ELL ET AL.  JOHN BRICKELL, APPELLANT.

| 87 | 329 |
|----|-----|
| 102 | 621 |
| 87 | 329 |
| 124 | 356 |
| 87 | 329 |
| 138 | 228 |

PUEBLO LANDS — TITLE OF SAN FRANCISCO — TRUST — CONTROL OF GOV-
ERNMENT. — The title ot the city of San Francisco to the pueblo lands, as
successor to the pueblo of San Francisco, was not an indefeasible estate,
nor strict ownership, but was a restricted and qualified right to alienate
portions of the lands to the inhabitants, and to devote the residue to
public uses, and was in the nature of a trust for the benefit of the inhab-
itants; and its right of disposition and use was in all particulars subject
to the control of the government.

OUTSIDE LANDS IN SAN FRANCISCO — ACT OF CONGRESS — TRUSTS — BONA
FIDE POSSESSORS. — The legal title to outside lands in San Francisco
passed to the United States from Mexico upon the acquisition of Cali-
fornia, and passed to the city by the act of Congress of March 8, 1866,
upon the trusts set forth in said act, in favor of persons in *bona fide*
actual possession of the same at the date of its passage, by themselves
or by their tenants.

ID. — POSSESSION OF HEAD OF FAMILY — SURVIVING WIFE — TRUST. —
The grant of Congress by said act to the city was intended to be made
in trust for the head of a family residing on the lands, and inured to
the benefit of a surviving wife in *bona fide* possession with her children
at the date of its passage by virtue of such possession, and not to the es-
tate of her deceased husband, who held *bona fide* possession prior thereto,
nor would she take title from the city in trust for the estate of her hus-
band or for their children.

ID. — POSSESSION BY TENANT — CONVENTIONAL TENANCY — HUSBAND AND
WIFE. — The " possession by tenant" spoken of in the act of Congress
signifies possession by a conventional tenant, and does not apply to the
possession of a surviving wife continued after the decease of the hus-
band, which occurred before the passage of the act.

ID. — ACT OF CONGRESS — ORDER 800 — ORDINANCE 822 — LEGISLATIVE ACTS
— BONA FIDE POSSESSION — CONVEYANCE — PRESUMPTION. — Where a
conveyance was made by the city in pursuance of the act of Congress of
1866, and of order 800 and ordinance 822 of the board of supervisors,
and of the acts of the legislature of 1868 and 1870 ratifying said order
and ordinance, to a person in actual possession of outside lands, if it does
not appear that any suit was pending against such person in regard to
the land, it will be presumed that no suit existed, and that the possession
was *bona fide*.

ID. — HOMESTEAD — ACT OF 1862 — SURVIVORSHIP — DESCENT — BONA FIDE
POSSESSION OF SURVIVING WIFE. — A homestead acquired under the act
of 1862 on the death of either spouse vested absolutely in the survivor
by descent, and need not be set apart by the probate court; and where
it appears that the possession of outside lands by a surviving wife was
under a legal devolution to her of the whole land as a homestead at the
date of the act of 1866, the *bona fides* of her possession are beyond doubt.

ID. — TRUSTS — PARENT AND CHILD. — A trust arises from contract or from circumstances which affect the conscience of a party, and charge him with the rights of another, but cannot arise in respect of outside lands in favor of children, as against a surviving wife who acquired title thereto as a *bona fide* possessor, if she had no contract with her deceased husband, and owed no duty to her children in respect to the lands.

ID. — HUSBAND AND WIFE — DEATH OF HUSBAND — POSSESSION BEFORE ACT OF 1866. — The mere possession of outside lands by a husband, who died before the passage of the act of Congress of 1866, when the title was in the United States, conferred no rights upon him or his heirs, nor could he be the recipient of a grant after his death; but the donation given by the act inured directly to the surviving wife, who was then in *bona fide* possession.

ID. — ESTATE OF DECEASED HUSBAND — ADMINISTRATION BY WIFE — ESTOPPEL — MISTAKE OF LAW. — The fact that the surviving wife became administratrix of the estate of her deceased husband, and by mistake of law, in ignorance of her rights, inventoried outside lands as his property, which did not belong to his estate, but were her own property by operation of law, does not estop her from claiming the property as her own.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*E. J. & J. H. Moore,* and *A. N. Drown,* for Appellant.

The decision in *Labish* v. *Hardy,* 77 Cal. 327, is decisive of the right of Mrs. Baker to take the title from the city in her own individual name and right. A like doctrine is held in *Kitts* v. *Austin,* 83 Cal. 167. The city had no ownership, but held the title in trust for *bona fide* occupants, and its right of disposition was subject to the control of the government. (*Townsend* v. *Greely,* 5 Wall. 326; *Grisar* v. *McDowell,* 6 Wall. 364; *Palmer* v. *Low,* 98 U. S. 16; *Trenouth* v. *San Francisco,* 100 U. S. 253; *Le Roy* v. *Cunningham,* 44 Cal. 599; *Dupond* v. *Barstow,* 45 Cal. 450; *Low* v. *Lewis,* 46 Cal. 519; *McManus* v. *O'Sullivan,* 48 Cal. 7, 17, 18; *Randall* v. *Austin,* 46 Cal. 54; *McCreery* v. *Sawyer,* 52 Cal. 257.) The homestead estate fell to the surviving spouse by the law of 1862. (Stats. of 1862, p, 519, sec. 4; *Estate of Wixom,*

35 Cal. 324; *Barber* v. *Babel*, 36 Cal. 16; *Rich* v. *Tubbs*, 41 Cal. 36; *Jarvis* v. *Hoffman*, 43 Cal. 314; *Mawson* v. *Mawson*, 50 Cal. 542; *Estate of Headen*, 52 Cal. 294; *Gagliardo* v. *Dumont*, 54 Cal. 496; *Herrold* v. *Reen*, 58 Cal. 443; *Bollinger* v. *Manning*, 79 Cal. 7.) Such an estate is not the subject of administration. (*Bollinger* v. *Manning*, 79 Cal. 7; *In re Burdick*, 76 Cal. 639; *Tyrrell* v. *Baldwin*, 78 Cal. 470; *In re Ackerman*, 80 Cal. 208; 13 Am. St. Rep. 116, and decisions there cited.) The probate proceedings were no estoppel. (*Riley* v. *Pehl*, 23 Cal. 74; *Sulzberger* v. *Sulzberger*, 50 Cal. 385; *Anthony* v. *Chapman*, 65 Cal. 73; *Stockton B. & L. A.* v. *Chalmers*, 65 Cal. 93; *Fitts* v. *Cook*, 5 Cush. 596; *Breeze* v. *Brooks*, 9 West Coast Rep. 294; *Gragg* v. *Gragg*, 65 Mo. 343; *Leck* v. *Haynes*, 68 Mo. 13–17; *Trenton B. Co.* v. *Duncan*, 86 N. Y. 221; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 344; *Storrs* v. *Barker*, 6 John's Ch. 168; 10 Am. Dec. 316; Bigelow on Estoppel, 425–503; Pomeroy's Eq. Jur., secs. 807–821.)

*Kellogg & King*, for Respondent.

The title was held by the city in trust for the heirs of John H. Baker. (*Rector* v. *Gibbon*, 111 U. S. 278; *Johnson* v. *Townsley*, 13 Wall. 72; *Lamb* v. *Davenport*, 18 Wall. 307; *McDonald* v. *Burton*, 68 Cal. 445; *Burton* v. *Burton*, 79 Cal. 490.) When Maria Baker acquired the city deed in the manner and under the circumstances shown, she held the title in trust for the benefit of the estate and the heirs of her husband. (*Hallette* v. *Collins*, 10 How. 174; *Minnesota* v. *Batchelder*, 1 Wall. 109; *Silver* v. *Ladd*, 7 Wall. 219; *Salmon* v. *Symonds*, 30 Cal. 301; *Wilson* v. *Castro*, 31 Cal. 421; *Wasley* v. *Foreman*, 38 Cal. 90; *Bird* v. *Wilcox*, 45 Cal. 686; *Hollinshead* v. *Simms*, 51 Cal. 158.) Brickell took his mortgages with full knowledge of the interest of plaintiff, who has a right to follow the estate into his hands. (*Oliver* v. *Piatt*, 3 How. 333.) The burden was on Brickell to show title under the homestead claim, which he failed to do. (*Estate of Delaney*,

37 Cal. 182.) A homestead could not be claimed upon lands held in common. (Smythe on Homesteads, sec. 126.) The homestead property was not relieved from administration until a homestead was set apart by the probate court. (*Rich* v. *Tubbs*, 41 Cal. 34; *Schadt* v. *Heppe*, 45 Cal. 433.) Mrs. Baker was estopped by the probate proceedings and distribution of the estate. (Code Civ. Proc., sec. 1637; Probate Practice Act, sec. 237; *Estate of La Coste*, Myrick's Prob. Rep. 67; *Williams* v. *Price*, 11 Cal. 213; *Racouillat* v. *Requena*, 36 Cal. 654.) Her final account was settled, and in it she charged herself with the entire ranch (less the parts sold) as the property of the estate. (*Estate of Stott*, 52 Cal. 406; *Reynolds* v. *Brumagim*, 54 Cal. 255; *Stubblefield* v. *McRaven*, 5 Smedes & M. 130; 43 Am. Dec. 505; *Tobelman* v. *Hildebrandt*, 72 Cal. 314.) This account was settled December 20, 1867, and acquiesced in to the present time by all the parties concerned.

THORNTON, J.—In this case there are two appeals presented by defendant Brickell. The first, 12992, from the judgment on the judgment roll, and the second, 13574, from the order denying Brickell's motion for a new trial. They are to be considered together.

The action is brought to establish a trust against defendant Brickell. The lands in controversy are portions of what is known as outside lands of the city and county of San Francisco, and not within that portion affected by the Van Ness ordinance. John H. Baker went into possession of the land in suit, called Baker tract, or Golden Gate ranch, on July 9, 1860. He purchased this and other lands within his possession from one James C. Garner. He was then a married man, and at the time above stated went into possession with his wife, Maria Baker (who is defendant Maria Baker Batchelder), and their children. John H. Baker died in March, 1863, leaving his wife surviving, with six chil-

dren, of whom the plaintiff was one, then an infant of tender years. The surviving wife, with her children, remained in possession of the land in controversy, and was in possession when the act of Congress of March 8, 1866, entitled "An act to quiet title to certain land within the corporate limits of the city of San Francisco," was passed, and before and some time after the passage of this act. (See this act in 14 Stats. at Large, page 4.)

At the time of the passage of this act, the legal title to this land was in the United States. The land granted by the act was within the corporate limits of the city of San Francisco, and the right and title of the United States was by it relinquished and granted to the city of San Francisco and its successors, subject to certain reservations designated therein, upon the following trusts, viz.: That all the said land not heretofore granted to said city should be disposed of and conveyed by said city to parties in *bona fide* actual possession thereof by themselves or tenants on the passage of this act, in such quantities and upon such terms and conditions as the legislature of the state of California may prescribe, except such parcels thereof as may be reserved and set apart by ordinance of said city for public use. A proviso follows the above, which has no bearing on the case, and need not be further adverted to.

It may be remarked here that no part of the land in suit was ever reserved or set apart by ordinance or otherwise for public use.

Some observations are here appropriate as to the nature of the title of the city successor to the former pueblo of San Francisco. The character of this title has been the subject of discussion in similar cases, both in the supreme court of the United States and in this court, and it may be regarded as settled law that the title of the pueblo, as well as that of the city, was not an indefeasible estate. Ownership of such lands cannot be strictly affirmed of either pueblo or

the city. The title amounted to a little more than a restricted and qualified right to alienate portions of the land to the inhabitants for building or cultivation, or both, or to use the remainder for commons, for pasture lands, or as a source of revenue, or for other public purposes. The right of this possession and use was in all particulars subject to the control of the government. They would be held by the pueblo or·city in trust for the benefit of the inhabitants, and its right of disposition was subject to be modified and taken away by the government. (On this point see *Townsend* v. *Greely,* 5 Wall. 326; *Grisar* v. *McDowell,* 6 Wall. 364; *Palmer* v. *Low,* 98 U. S. 16; *Trenouth* v. *San Francisco,* 100 U. S. 253; *Le Roy* v. *Cunningham,* 44 Cal. 599; *Dupond* v. *Barstow,* 45 Cal. 450; *Low* v. *Lewis,* 46 Cal. 549; *Mc-Manus* v. *O'Sullivan,* 48 Cal. 7, 17, 18; *Randall* v. *Austin,* 46 Cal. 54; *McCreery* v. *Sawyer,* 32 Cal. 257; *People* v. *Holladay,* 68 Cal. 442.)

The legal title to this land passed to the United States from Mexico on its acquisition of California, and passed to the city by the act of·March 8, 1866, upon the trusts above set forth, for the benefit of such of its inhabitants as were in the *bona fide* actual possession of the same at the date of the passage of the act which is above referred to, viz., on the eighth day of March, 1866.

Now, who was in the *bona fide* actual possession of the land on the 8th of March, 1866? For whose benefit and behalf was the grant by Congress made? Obviously, Maria Baker. She was then, and before that date, an inhabitant of the city of San Francisco, and residing on the lands with her children. That the grant was made to the head of the family there can be no question, and Maria Baker was then head of her family. We consider this determined in *Labish* v. *Hardy,* 77 Cal. 327, where a similar question was determined on similar language in the grant made by act of Congress to the corporate authority of the town of Santa Cruz.

The only difference between that case and this is, that in the case cited, the surviving husband was held to be the grantee, and in this case, the surviving wife is the grantee. The possession in both cases was that of the head of the family, the husband in one case, and the wife or widow in the other. Here the husband and father was not in being when the act of Congress was passed in 1866. He had then been dead nearly three years. It goes without saying, that, then being dead, he could not take title under the grant, and, therefore, on his decease, the land did not become a part of his estate. It may be added here, that the tenant spoken of in the act of Congress must be held to signify the conventional tenant. (*Brooks* v. *Hyde*, 37 Cal. 374.)

Here there was no contract, either expressed or implied, from which the tenancy could be inferred, nor is there any reason to hold that Mrs. Baker became the tenant, in any sense, of her husband, on his decease.

To carry the act of the 8th of March, 1866, into execution, the board of supervisors passed an ordinance known as order 800, which was ratified and affirmed by the act of the legislature passed March 27, 1868. Order 800 was passed by the board of supervisors on the 14th of January, 1868. (See Stats. 1867–68, pp. 379 et seq.)

Subsequently, in 1870, another act of the legislature was passed to expedite the settlement of the land titles in the city and county of San Francisco, etc., forming order 866 of the board of supervisors of the city. (See Stats. 1869–70, p. 353.) This enactment was made to enable the parties entitled to procure conveyances of the title to these lands from the city and county of San Francisco.

Of the act of Congress, and of the ordinance of the city and county of San Francisco, and of the acts of the legislature, it may be remarked that nowhere in them is the title of any other person recognized or allowed, save those who were in actual *bona fide* possession on the 8th of March,

1866, by themselves or their tenants, except where the possessor had been ousted from his possession, which possession he might recover by suit. As there was no evidence of ouster here by Maria Baker, no question arose here as to ouster and recovery of possession by suit at law.

By the order 800, ratified as above, it was provided that a map or plan of these outside lands should be made and adopted by the board of supervisors above mentioned; that upon the completion of the map it should be deposited for public inspection in the office of the clerk of the board of supervisors, there to remain for a period of thirty days, notice whereof should be given by publication in three of the daily papers of the city during the time that the map should so remain in the clerk's office.

The occupant of any tract of land was required by order 800, ratified as above, to present a diagram of his land, and have it delineated on the map made by the supervisors. This delineation of a tract, however, could not be made on the map, unless all the taxes on it should have been paid for five fiscal years preceding the year beginning July 1, 1866. The claimant was also, before the title could be procured, required to surrender all claim to any streets and highways. By act of 1870 (Stats. 1869–70, p. 353), passed March 14th of that year, the claimant was empowered to file a petition for a grant from the city of the tract of land of which he was in possession as above mentioned. By the provisions of this act, the petitioner was to set forth in such petition, verified as required by the act, a claim that he or his tenants, or the persons through whom he claims or derives possession, had been, from and including the eighth day of March, 1866, and still was, in possession of a portion of such outside land, and that he, or the person through whom he claims or derives possession, has paid to the tax collector of the city and county of San Francisco the amount assessed by the outside land commission upon the land described in the

petition to pay for the land reserved for public uses provided for in section 10 of order 800, and has also paid the five years' taxes mentioned in section 4 of order 800, and all taxes levied on said lands for state and municipal purposes then remaining unpaid. The board of supervisors was — these before-mentioned acts having been done — required to proceed to act on his petition. The claimant was required to make proof of the facts stated in his petition before a committee of the board of supervisors styled the outside land committee. After the proofs were closed, the outside land committee was required to consider the same, and to make such report and recommendation thereon as shall seem to them just and proper in the premises. The committee was required to file with the clerk of the board the testimony taken by it, and its report, which report was to be submitted to the board of supervisors for their approval; and if, in their judgment, the claim of the petitioner was well founded, the board was, by an order entered in their minutes, to adjudge and award a grant of his lands to the petitioner, less the amount reserved for public use. The board was thereupon required to give public notice of their award by notice published at least once a week for three successive weeks in a daily newspaper published in the city and county of San Francisco, which notice should specify the name of the applicant, the date and filing of his petition, and the tract of land awarded, by a good and sufficient description thereof, proof of publication of which notice was to be made in the manner then or thereafter required by law for the proof of publication in civil process. (Act of 1870, sec. 2, p. 354.)

The third section of the act provides for the execution of a deed of conveyance signed by the mayor of the said city and county, and acknowledged and delivered by him to the applicant of the tract of land awarded to him, to which shall be attached the corporate seal of the city and county above named, provided the petitioner, before

receiving the deed aforesaid, shall quitclaim and person-
ally deliver the possession of all lands claimed by him,
reserved for public purposes, and for the use and bene-
fit of the city and county, provided there is no suit
pending between the petitioner and some third person.
A reference will be further made to this last-mentioned
proviso hereafter in this opinion.

By the third section it is provided that the convey-
ance executed under the provisions of this act shall op-
erate as an acknowledgment, on the part of the city and
county aforesaid, that the title to the land described in
it has passed under and by virtue of order 800 and ordi-
nance 822, and of the several acts of Congress, and of
the legislature ratifying said order and ordinance, under
.the authority of which the same have been passed. The
said conveyance shall likewise operate to grant, convey,
remise, and release to the party, his heirs and assigns,
named therein, the lands in such conveyance described,
and all the estate and interest, present and future, of
the city and county of San Francisco, in and to such
lands.

On the tenth day of January, 1873, Maria Baker, after
due and regular proceedings had under order 800, and
the acts of the legislature of 1868 and 1870, was granted
a conveyance, in the usual form, of all the lands described
in the complaint as being part of the Baker ranch, which
conveyance was executed to her by the authorities of the
city and county, as required by the act of 1870, above
referred to, and in the mode therein set forth, conveying
to her the title of the city and county of San Francisco,
as declared in the fifth section of the act of 1870, the
provisions of which have been fully stated above. When
the conveyance was made to her it does not appear
that any suit in regard to the land was pending against
her. Not appearing, this court must regard it as not
existing.

Maria Baker intermarried with one David F. Batch-

elder, and subsequently she and her husband, Batchelder, executed to the defendant Brickell divers mortgages on the land conveyed to her by the deed of the city and county aforementioned, and on other lands, to secure the payment of divers sums of money, amounting in the aggregate to the sum of forty-two thousand five hundred dollars.    These mortgages were, subsequently, regularly foreclosed, and sold under a decree of foreclosure regularly given, made, and entered, and by such decree and the sale thereunder, and the deed of the sheriff of the city and county of San Francisco executed to defendant Brickell, the title of said Maria Batchelder became vested in Brickell.

It further appears, from the finding herein, that, on the 23d of September, 1862, Maria Baker and her husband, John H. Baker, executed a declaration of homestead, in due form of law, embracing the land involved in this litigation.

This homestead estate, under the provision of the act of 1862, under which the declaration was made and recorded, on the death of either spouse vested absolutely in the survivor.    Such is the effect of the fourth section of the act of 1862 (see *Herrold* v. *Reen,* 58 Cal. 445–447), where the point is considered and decided. (See also cases cited in the opinion in that case.)    It was not necessary that this homestead estate should be set apart by the probate court to the surviving spouse.    It vested in the survivor by descent.    (*Herrold* v. *Reen,* 58 Cal. 445–447.)    So on the death of John H. Baker, in March 1863, the homestead estate vested in his surviving wife, Maria Baker.    Under such circumstances, the contention cannot be upheld that the possession of Maria Baker was not, on the 8th of March, 1866, *bona fide.*    She was not only in actual possession, but she was there having title to the whole land, as against any heir of John H. Baker, by the legal devolution to her of the whole land as homestead.    In such a state and condition, the

*bona fides* of her possession could not be impeached. Its *bona fides* were beyond a doubt.

This conclusion disposes of this case; for in no event would any trust arise here in favor of any of the children, issue of the marriage of Maria Baker and her husband, John H. Baker. The plaintiff could have no claim to any portion of the land. There is nothing on which to build a trust. A trust arises from contract, or from circumstances which affect the conscience of a party, and charge him with the rights of another. Here there was no contract between Maria and John H. Baker constituting a trust, and no circumstances affecting the conscience of Maria Baker, charging her with any duty to her children in regard to the lands in suit.

John H. Baker had no title to this land. His settlement and possession on it were merely permissive. He acquired no right to it by such possession. The title was then in the United States, to give it to whom it thought best, and when it did make a donation, in March, 1866, he could not be the recipient of a grant. He had then departed this life, and could take nothing by the act of Congress passed on the day above mentioned. The possession on that day was that of his wife, the then head of the family, Maria Baker.

She owed no duty to her children, save support, maintenance, and education, — none in regard to this land. Independent of the homestead which had arisen under the act of 1862, which, as we have seen, passed to her on the death of her husband, we think she was, on the 8th of March, 1866, in the actual *bona fide* possession of the land; but when the homestead right is taken into account, there can, in our judgment, be no question or doubt as to the *bona fides* of her actual possession.

She was therefore the grantee, under the act of Congress, of the land in question. The grant to Maria Baker was a pure donation, and how any trust in favor of any other person could arise out of it, we cannot surmise.

Now, are we without authority to sustain this conclusion? In *Labish* v. *Hardy*, 77 Cal. 327, a like question came before this court for discussion, and its determination was in accordance with what is stated herein. In that case, the decision was in relation to the provisions of the act of Congress of July 23, 1866, relinquishing and granting the lands within the limits of the town of Santa Cruz to the corporate authorities thereof, in trust, and with authority to convey them to the parties in the actual *bona fide* occupancy thereof at the date of the passage of the act. On May 13, 1871, the corporate authorities of the town conveyed the premises to William H. Hardy, father of appellant, and husband and grantor of respondent.

The appellant claimed that the rights and equities acquired by her parents, through occupancy and possession of the premises, constituted community property, one half of which belonged to her mother, and at her death, by the law then existing, descended to and vested in her children. The mother of appellant died in 1856, ten years prior to the passage of the act of Congress in July, 1866.

The court, per Sharpstein, J., said: "The beneficiaries under the act of Congress were clearly those in the *bona fide* occupancy of the land in the town of Santa Cruz at the date of the passage of said act, which was ten years after the death of appellant's mother. An occupancy which terminated ten years before the passage of the act would not be a *bona fide* occupancy at the time of its passage. We are unaware of any law under which a bare occupancy of any public land of the United States vests in the occupant any right or equities in or to the land so occupied. We think no property was acquired in the premises in controversy, by either of the parents of appellant, prior to the passage of the act of July 22, 1866."

This judgment was concurred in by five of the justices

of this court, and there was no dissent. It is clearly correct, and meets approval.

The other circumstances, viz., the fact that Maria Baker qualified and was appointed as administratrix of John H. Baker, and put the land in suit in the inventory returned by her to the probate court as assets of her intestate's estate, and entered on the administration of the estate, are entirely immaterial. We are aware of no law by which a person appointed administrator loses his land by so acting.

There is no estoppel on Maria Baker to claim her own property, under such circumstances. She no doubt acted in this matter through ignorance of her rights, *inops consilii,* or if advised at all, from having been improperly counseled. It is useless to dwell on the points adverted to, in relation to the administration, which are totally immaterial, and cannot, in any proper view of them, affect the decision of this case.

The judgment and order are reversed, and the cause remanded for a new trial, in accordance with the views expressed in this opinion.

So ordered.

McFarland, J., and Sharpstein, J., concurred.

Hearing in Bank denied.

Beatty, J., dissenting.— Respondent's petition for a rehearing of this cause having been denied by the court, I cannot allow the occasion to pass without expressing my dissent from the conclusion of the Department upon the point principally considered in the opinion of Justice Thornton.

If the decision of the court had been rested upon the proposition that under the homestead laws of California Mrs. Baker, on the death of her husband, became by right of survivorship the sole and exclusive owner, as against her children, of the entire estate in the lands

covered by their joint declaration of homestead,— irrespective of its value at the time of such declaration, or of her husband's death, — I might not have dissented from that view.

But the judgment and order of the superior court are reversed, and the cause is remanded for a new trial, to be had in accordance with the views expressed in the opinion, which thereby become, and must remain, the law of the case.

Amongst the views so expressed is one from which I feel constrained to express my dissent.

It is held — as I understand the opinion — that Mrs. Baker, by mere force of the act of Congress of 1866 granting to the city of San Francisco the outside lands, and independent of any right accruing to her under our homestead laws, became entitled to a conveyance from the city of all the lands left in her possession by the death of her husband, to be held by her in her own right, to the exclusion of her. children. This conclusion is based upon a narrow and literal construction of the clause of the act requiring the city to convey the lands granted to the parties in *bona fide* actual possession thereof by themselves or tenants at the date of the passage of the act. It assumes either that the person lawfully in possession, by himself or tenant, at the date of the passage of the act, was the sole object of the bounty of the government, without regard to the character or capacity in which he had obtained or held the possession; or it assumes that when John H. Baker died, in 1863, leaving his widow and minor children in possession of the land in controversy, he had no estate in the land to which they could succeed, and that the possession so devolved upon her as head of the family was held by her absolutely in her own right, and not in any representative capacity.

If this is true, — if the children of John H. Baker inherited no interest in this land from him when he died, — it must be equally true that if their mother also had

died before the passage of the act of 1866, they would have inherited nothing from her. What, then, would have happened? Being minors and orphans, they and the land would naturally have passed into the charge and custody of a guardian, who would have been found in the *bona fide* actual possession of the land, as head of the family, at the passage of the act of 1866. Such guardian would have been just as clearly within the literal terms of the act in the case supposed, as Mrs. Baker actually was in the case as it is; and if the representative character in which she held the possession, and her trust relation to her children, must be ignored, so must the representative character and trust relation of the guardian have been ignored; and on precisely the same reasoning which sustains the exclusive right of Mrs. Baker to receive a conveyance of the land, it must have been held that the guardian was entitled to a conveyance of the land, to the exclusion of his wards. But I venture to say that no court would have carried the principle here decided to this its logical and necessary consequence. In my opinion, it would have been held, in the case supposed, that it was the duty of the guardian to obtain a conveyance of the lands from the city, and that he would hold them, when so conveyed, in trust for his wards, according to their several and respective rights as heirs and successors of their deceased parents. And, upon the same grounds, I am of the opinion that Mrs. Baker, when she obtained a conveyance of these lands (considering the matter without reference to her rights under the homestead law), held them in trust for her children, according to their respective rights as heirs of her deceased husband.