[No. 8352.   Department Two.   December 14, 1909.]

CHRISTOPHER CARRUTHERS, *Respondent* v. O. B. WHITNEY
et al., *Appellants.*[1]

ESTOPPEL — EQUITABLE ESTOPPEL — REPRESENTATIONS.   The doctrine of equitable estoppel applies in cases not reached by common law estoppel by deed or records, and where a person wrongfully or negligently causes another to rely upon acts or representations to his prejudice.

EXECUTORS AND ADMINISTRATORS—SALE OF LAND—ESTOPPEL TO CLAIM INDIVIDUALLY.   An administratrix whose property was included in the inventory of the estate, and who petitioned for its sale as properly belonging to the estate, and made a deed conveying the same in terms upon payment of the price bid, is estopped to deny the validity of the deed or to assert her individual ownership or title thereto; especially where she agreed with creditors that it be sold as property of, and represented to the purchaser that it belonged to, the estate.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered April 27, 1909, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to quiet title.   Affirmed.

*Merrick & Mills*, for appellants.

*Robert McMurchie*, for respondent.

DUNBAR, J.—This is an action to determine adverse claims to a tract of land in Whatcom county, Washington, the action being brought by the respondent to quiet title to the same.   Upon the trial of the case, the court found in favor of the plaintiff, judgment was entered in accordance with the prayer of the complaint, and appeal followed.

Both parties claim under one Emil Freiner, who died intestate in Snohomish county, Washington.   The premises in controversy were concededly acquired by Emil Freiner under the homestead laws of the United States, patent therefor being issued to him September 28, 1898, and duly re-

[1]Reported in 105 Pac. 831.

corded. On November 4, 1903, Freiner executed and de-
livered to his wife, Frances, a deed conveying the premises
in controversy, which deed was duly recorded. After Frei-
ner's death a petition for the probate of his estate was filed
in the superior court of Snohomish county, and letters of
administration were issued to Frances by said court. An
inventory was made by the administratrix, and filed in the
superior court of Snohomish county August 9, 1904. On
September 28, 1904, the administratrix filed in such super-
ior court a petition to sell real estate. The inventory in-
cluded the lands in controversy. There was some question
about the description of the land, which was afterwards
cured, and it is now a conceded fact that all the lands in con-
troversy were included in the order of sale, and were intended
to have been included in the inventory and petition.

On the 1st day of October, 1904, the superior court
issued its order to show cause why an order should not be
granted to sell certain real estate at private sale, and on the
19th of October an order was made directing the giving
of notice to creditors. Notice of sale of real estate was
given, and the same was published. Thereafter the ad-
ministratrix made her report of sale to the court, and the
court fixed a date for hearing. Notice was given of such
return day. Thereafter, on the 24th day of November,
1905, an order was made confirming the sale of such real
estate, being the real estate in controversy here, to one
Daniel Neeson, who paid to the administratrix the sum of
$650 for said land, and the administratrix executed and
delivered certain deeds conveying the said land in statutory
form.

The court found the facts which we have briefly recited;
that the administratrix had petitioned and prayed for au-
thority to sell the real estate in controversy; that it was sold
and confirmed, and that the deeds were made to Neeson as
aforesaid; also found that the defendant O. B. Whitney,
subsequent to the conveyances aforesaid, obtained, for a

consideration of five dollars, a quitclaim deed from the said Frances Freiner to the land in controversy, which said quitclaim deed was duly filed in the auditor's office of Whatcom county; that at and prior to the taking of the quitclaim deed, the defendant Whitney knew of the execution and delivery by said administratrix of the deeds aforesaid to the said Neeson, and of the subsequent conveyance to the Keith Investment Company by said Neeson.  It appears in the proceedings that the Keith Investment Company sold the said land to the respondent.  The court found that the said Frances Freiner never took under the deed from Emil Freiner, and never made any claim individually to said real estate, and that, prior to the sale thereof by her as administratrix, she had a conversation with Daniel Neeson, the purchaser at such sale, in which she represented to said Neeson that she was selling the whole of such real estate as the property of the estate of Emil Freiner, deceased.

Many exceptions are taken to the findings of the court by counsel for appellants, but there is only one pertinent proposition in this case, and that is whether the administratrix is estopped from raising the question of the validity of the sale to Neeson.  It must be conceded that Whitney can take no better title to the land than his grantor, Mrs. Frances Freiner, had.  The findings of the court, we think, are substantiated by the record in the case, most of which is documentary.  It is the contention of the appellants that the status of this property as community property continued until, by reason of some act of the parties or by reason of the law, such status changed, and that such change occurred upon the execution and delivery of the deed from Emil Freiner to Frances Freiner; that the court had no jurisdiction to order the sale of the property which by public record appeared to be the property of Frances Freiner; that it is a fact which exists that gives the court jurisdiction to sell real estate, and not the representations made in the declaration of the administratrix through the inventory filed.

Many cases are cited by counsel for appellants to the effect
that an administrator who sells his own property as prop-
erty of the decedent is not estopped from claiming title to
his own property notwithstanding such sale, and no doubt
there are many authorities to this effect as a general propo-
sition.

· The first case which is strongly relied upon by the appel-
lants is *Anthony v. Chapman*, 65 Cal. 73, 2 Pac. 889. In
that case the general doctrine contended for was no doubt
announced in the syllabus, viz., that an executor who repre-
sents in his petition. for letters testamentary that certain
property belonged to the estate of the decedent, and files
an inventory including such property, is not thereafter es-
topped from claiming the property as his own. But upon
an examination of the case itself, the syllabus may be con-
sidered as too broad. In that case the property did not go
to sale. The plaintiff claimed under a conveyance from one
Bird to Mary A. Smith. · The defendants claimed that this
conveyance was made to Mary A. Smith in trust for one J.
P. Smith who, they claimed, paid the consideration therefor
and from whom they derived title. Mary A. Smith left a will
appointing J. P. Smith her executor. He applied for letters
testamentary and, in his petition, represented that the prop-
erty in controversy was a portion of the estate of the testa-
trix, and also included it in the inventory of the estate filed by
him. J. P. Smith died pending the administration, and the
plaintiff was appointed administratrix with the will annexed,
and hence the contest over that particular portion of the
property. The court decided the case somewhat upon the
testimony, saying that there was no direct evidence that
Mary A. Smith did not pay for the property, and that there
was a conflict of evidence as to who actually paid the purchase
money. The alleged trustee and beneficiary both died be-
fore the commencement of the action. All that the court
said on this proposition is the following:

"The appellant contends that [plaintiff] by representing

in his petition for letters testamentary of the will of Mary A. Smith, that said property belonged to her estate, and filing an inventory of her estate which included said property, J. P. Smith was estopped from afterwards claiming that it was his own. In *Carter v. McManus*, 15 La. Ann. 676, the court says, 'that admissions made by an executor or administrator in the course of judicial proceedings are made for the benefit of the estate represented by him, and do not conclude his individual right by way of estoppel.' Another case very much in point is *Werkheiser v. Werkheiser*, 3 Rawle 326. The facts in this case fall short of what is required to constitute an estoppel."

So that it will be seen that that case was decided on the authority of *Carter v. McManus*, 15 La. Ann. 676, and of *Werkheiser v. Werkheiser*, 3 Rawle 326. An examination of those cases elicits the fact that they fall far short of the matters which are claimed to be matter of estoppel in this case. In *Carter v. McManus* all that was decided was that an application, made by the executor named in the will to have the will probated, was not a judicial admission which would estop the executor from claiming as his own property disposed of in the will. In *Werkheiser v. Werkheiser* it was decided that the presentation of a petition to the Orphans' court, setting forth that the petitioner's father died seized of the premises therein described, leaving a widow and seven children, and praying the court to award an inquest, to make partition, etc., does not estop the petitioner from afterwards maintaining an ejectment for the same premises, and proving that they were the estate of his mother who was his father's first wife, and descended to him as her heir, to the exclusion of his brothers and sisters, the children of a second wife. Under such circumstances the court said that such allegations would in most cases operate very slightly, if at all, against him; that nothing more was done in the case; that the plaintiff committed an error in presenting the petition and probably, upon discovering his mistake, relinquished the proceedings under it and adopted an action of

ejectment. In none of these cases was the land sold and other parties misled to their injury.

The American Law of Administration by Woerner, § 480, cited by the appellants, only announces the undoubted rule that, so far as covenants and words of warranty in an administrator's deed are fairly referable to their official capacity or duty, their effect is limited to the estate alone, and they in no manner affect the personal right or liability of the administrator; citing the instance that, where a widow administratrix in executing specific articles of sale by her deceased husband under order of the Orphans' court, conveyed all her husband's estate and her own, in law and equity she was held not barred of her dower which was the only interest she had in the land. Many of these cases are dower cases, where the wife's right is more or less a technical right, and it would be reasonable to suppose that she might not think when she was selling the estate of the husband that there would be any claim that her dower would be conveyed.

A very positive, and it seems to us somewhat dogmatic, statement is made in *Baker v. Brickell*, 87 Cal. 329, 25 Pac. 489, 1067, a case cited by appellants, where the court, noticing this phase of the case, says:

"The other circumstances, viz., the facts that Maria Baker qualified and was appointed administratrix of John H. Baker, and put the land in suit on the inventory returned by her to the probate court as assets of her intestate's estate in the administration of the estate, are entirely immaterial. We are aware of no law by which a person appointed administrator loses his land by so acting. There is no estoppel on Maria Baker to claim her own property under such circumstances. She no doubt acted in this matter through ignorance of her rights, or, if advised at all, from having been improperly counseled."

This, as a general proposition, we think is probably too sweeping a statement of law, the question of estoppel being largely a question of fact. We think it unnecessary to re-

view cases cited by counsel for respondent. They announce squarely the other doctrine, viz., that under such circumstances the administrator, or administratrix as the case may be, is estopped.

But these cases must all be considered with reference to the particular circumstances involved in the case. It makes no difference in this particular case whether the court acted with jurisdiction to sell the property. The deed of the administrator conveyed the property in terms to the purchaser, and in terms it was a deed, and the only question is whether, under the circumstances as shown by the record, the administratrix is estopped from questioning its validity and asserting her own title. Estoppel is an equitable proceeding, or speaking more accurately perhaps, it is the equitable result of a wrongful proceeding or act, a reliance upon which would, in the absence of an estoppel, work an injustice to an innocent person. At the common law estoppel was founded on deeds and records of courts, but estoppel in equity is estoppel *in pais*. The principle now applies because it has been found that the common law rule was too narrow and inadequate for the attainment of justice under the multiplied transactions of modern times, and hence the equitable estoppel of the present day. The well-understood idea of equitable estoppel is that, where a person wrongfully or negligently by his acts or representations causes another who has a right to rely upon such acts or representations to change his condition for the worse, the party making such representations shall not be allowed to plead their falsity for his own advantage.

This is an extreme case, where there can be no question that the doctrine of equitable estoppel should apply. We would not lay down the harsh rule, such as seems to have been laid down in some cases cited by the respondent, that under all circumstances the representations made by an administratrix, through inventory filed, would estop her from questioning the conveyance of her own interest; for there

might be an honest mistake which in good conscience she ought to be allowed to show or explain away. But in this case the representation was not only made in the declaration of what property belonged to the estate, but by petition to sell, by solemn deed of conveyance, by holding out to the world, and especially to the respondent, that the property which the administratrix now claims was the property of the estate, whereby she obtained, presumably as an heir of Freiner, an interest in the money obtained for the land sold. But the record also shows that the creditors of this estate had raised some question as to the validity of the sale to Mrs. Freiner, and that it was agreed between the administratrix, through her attorney, and the creditors, through their attorney, that this particular piece of land should be sold as property of the estate. It also shows that personally she represented to the purchaser that he was to receive title to all of the estate described in the inventory, if he would bid upon the same. Under such circumstances it would be an outrage upon justice to permit the administratrix or her grantee to question the validity of the deed conveying the property in controversy.

The judgment of the court is affirmed.

RUDKIN, C. J., MOUNT, CROW, and PARKER, JJ., concur.