[No. 14367.  Department One.  January 7, 1918.]

GEORGE W. ALLEN, *Trustee, Appellant,* v.
DAVID R. MITCHELL *et al., Respondents,*
ADOLPH A. GUST *et al., Defendants.*[1]

MORTGAGES—LIENS—PRIORITY. Where a trust deed by a mortgagor was made subject to a mortgage, and at the time of the execution of the mortgage a third person held sheriff's certificates of sale of the property, the trustee may rely on the paramount title of the third party, and may take assignments of the sheriff's certificates of sale which would be superior to the mortgage, although the third party had orally agreed to make her lien subject to the mortgage.

SAME—LIENS—PRIORITY—EQUITABLE ESTOPPEL. In such case, the grantee in the trust deed, holding legal title under the deed and the equitable title under the assignments of the sheriff's certificates, is not equitably estopped to assert title on account of the verbal agreement of the assignor of the certificates of sale that they should be subject to the mortgage, since the mortgagee not having relied on any representations but upon the oral promise with full information as to the state of the title, does not bring her case within any of the principles of equitable estoppel.

FRAUDS, STATUTE OF—CONVEYANCE OF LAND—VALIDITY. Since a sheriff's certificate of sale vests an interest in real property, an oral agreement by the holder that the certificates shall be subject to a mortgage creates no interest nor incumbrance upon the land, in view of Rem. Code, § 8745, requiring all such contracts to be by deed.

Appeal from a judgment of the superior court for King county, Ronald, J., entered June 30, 1917, upon findings in favor of the defendants, in an action to foreclose a trust deed, tried to the court. Reversed.

*C. B. White,* for appellant.
*Mitchell & Lawrence,* for respondents.

WEBSTER, J.—This action was brought by George W. Allen, as trustee for the National Surety Company, to foreclose a trust deed and an assignment in trust of certain sheriff's certificates of sale, executed by Adolph A. Gust and

[1]Reported in 169 Pac. 826.

Pauline Miller, respectively. The question presented is one of prior equities between Allen, as trustee, and David R. Mitchell, the assignee of a certain mortgage. The controlling facts are these:

On September 18, 1912, Pauline Miller obtained a judgment against Adolph A. Gust and levied execution on all of the property included in the trust deed. Later she became the purchaser of the property at execution sales, and sheriff's certificates were issued to her as provided by law, which were filed for record November 7, 1912. On April 14, 1913, Adolph A. Gust and wife executed a mortgage for $1,000 to G. B. Warren on the parcels of land involved in the controversy. On February 14, 1916, this mortgage was assigned to the defendant David R. Mitchell, the present holder thereof. On August 29, 1913, pursuant to the written application of defendant Gust, the National Surety Company executed a supersedeas bond in the amount of $100,000, to stay a judgment of the superior court of King county in a divorce action wherein Sarah A. Gust was plaintiff, Adolph A. Gust was defendant, and Pauline Miller was intervener. On the same day, and for the purpose of indemnifying the surety company against any loss or damage by reason of its said suretyship, Adolph A. Gust executed to appellant the trust deed above mentioned, and Pauline Miller assigned to appellant, for the same purpose, the above mentioned sheriff's certificates. On December 18, 1913, the appellant acquired a sheriff's deed in furtherance of the certificates. The surety company was required to pay large sums of money by virtue of its undertaking, and on June 16, 1916, appellant, pursuant to the trust agreement, commenced this action to foreclose the trust. Respondents Mitchell, for answer, pleaded ownership of the Warren mortgage by assignment, and further alleged that, at the time of its execution, Pauline Miller verbally consented to waive her interest in the property in favor of the mortgage, and orally agreed that the mortgage should be a lien prior to the sheriff's certificates on the

property therein described; that the mortgage was of record prior to the transfer of the certificates to appellant, and that he accepted the certificates with knowledge of the existence of the mortgage and waiver, and was thereby estopped from asserting a prior lien on the mortgaged property. The reply traversed the allegations of the answer, and upon the issue thus joined, the court entered a decree adjudging the priority of respondents' mortgage. The plaintiff appeals.

Pauline Miller did not join in the execution of the Warren mortgage, nor did she transfer to the mortgagee the sheriff's certificates covering the property included in the mortgage. However, respondents seek to preclude appellant, as the assignee of Pauline Miller, from asserting the priority of his lien, upon the theory of equitable estoppel.

The lower court found that, at the time Warren was requested to make the loan for which the mortgage was given, he refused to do so unless Pauline Miller would agree to waive her interest on the property in favor of his mortgage, whereupon she verbally agreed that the mortgage should encumber her interest in the property. The loan was then consummated, and the mortgage, signed by Gust and wife only, was duly delivered. While this instrument was filed for record April 15, 1913, some four months prior to the assignment of the certificates to appellant, yet there was nothing of record to indicate that the mortgage created an incumbrance on the interest of Pauline Miller in the property or that her rights were in any wise affected thereby. The evidence clearly shows that appellant did not have actual knowledge of the oral agreement at the time the surety company executed the supersedeas bond, and did not learn thereof until after the commencement of this action. The trial court found, however, that, at the time of accepting the assignment of the certificates, the appellant did not rely solely upon the records to ascertain the incumbrances upon the property of Gust, but required him to furnish a written statement under oath showing the full amount of mortgages then existing upon

his property; that this statement disclosed mortgages amounting to $32,000, whereas in fact the total incumbrances, including the Warren mortgage, did not exceed $30,000; that plaintiff had knowledge of facts which would lead an ordinarily prudent person to discover the full extent of such liens, and that by inquiring of the mortgagees he could have ascertained the character and extent of the claims against the property.

There can be no question but that the trust deed conveyed Gust's interest subject to the Warren mortgage, but at the time the mortgage was executed, Pauline Miller held the sheriff's certificates for the property included in the mortgage, and these certificates were assigned to the appellant when the trust deed was executed and delivered. The written statement furnished by Gust showed the amount of the incumbrances against his property without enumerating or describing the mortgage indebtedness, but did not disclose, or purport to show, any liens or charges against the certificates of sale held by Pauline Miller or her interest in the land evidenced thereby. Although the title transferred by Gust was subject to the lien of the Warren mortgage, the certificates assigned by Pauline Miller were prior to the mortgage, and appellant was warranted in relying upon her paramount title.

The court did not find the facts upon which it based the conclusion that appellant was put upon inquiry which if pursued would have disclosed the extent of respondents' claim, and from a careful reading of the record we are unable to discover such facts. There was no more reason for appellant to inquire of Warren whether his mortgage constituted a lien on the property interest of Pauline Miller than there was to make a similar inquiry of any of the other numerous persons holding mortgages on the property of Gust. Therefore, in considering this case, in so far as the fact is material to its determination, we must proceed upon the theory that appellant is not charged with knowledge, either actual or

constructive, of the verbal agreement between Warren and Pauline Miller.

Respondents contend, however, that, notwithstanding such absence of knowledge, the appellant's rights under the assignment are inferior to the mortgage for the reason that the interest of Pauline Miller under the sheriff's certificates was an equitable interest or title, and consequently appellant cannot claim to be an innocent purchaser without notice, but stands in the place of Pauline Miller; that as she is estopped from asserting her prior right under the certificates, so, also, is the appellant, her assignee.

This court has held that the doctrine which protects *bona fide* purchasers without notice is applicable solely to purchasers of a legal title, and that the purchaser of an equitable interest purchases at his peril and acquires the property burdened with every prior equity charged upon it. In our opinion, however, this principle is not controlling in the present controversy. Here the appellant holds in trust, not only the equitable title as evidenced by the certificates, but the full legal title as evidenced by the sheriff's deed. This title, respondents assert, is subject to an equity existing in their favor, based wholly upon the doctrine of equitable estoppel which they seek to invoke against the appellant as the assignee of Pauline Miller. But is there any room in this case for the application of the doctrine of equitable estoppel?

Pomeroy, in his work on Equity Jurisprudence, states the essential elements which must enter into and form a part of an equitable estoppel in all its phases and applications in the following language:

"1. There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel,

at the time when such conduct was done, and at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. 5. The conduct must be relied upon by the other party, and, thus relying he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it."

In the present case, Pauline Miller did not misrepresent or conceal any past or existing fact. Warren did not act upon the assumption of the truth of any fact which was not entirely as represented. He was fully informed that the legal title to the property rested in Gust and that the equitable title was held by Pauline Miller. He was in no manner deceived or misled as to the actual situation then existing. It was open to him to fully protect himself, either by requiring Pauline Miller to join in the execution of the mortgage, or to transfer to him the certificate of sale covering the mortgaged premises. With full and detailed knowledge of all the facts relating to the status of the title, he saw fit to rely upon a verbal agreement. This is not a case where a person having the title to property represents another as the owner and thereby induces a third person to accept from such other a mortgage for a valuable consideration, nor does the assertion by appellant of the rights growing out of the certificate involve the falsifying of any fact, either positively represented or negatively concealed by Pauline Miller. The transaction between the parties amounted to this and nothing more: Pauline Miller gave Warren a verbal mortgage on her equitable interest in the property, which Warren willingly accepted. That such facts do not constitute an equitable estoppel is manifest from our own holdings. *Car-*

*ruthers v. Whitney*, 56 Wash. 327, 105 Pac. 831, 134 Am. St. 1114; *Rowe v. James*, 71 Wash. 267, 128 Pac. 539; *Maxwell v. Dimond*, 83 Wash. 30, 145 Pac. 77.

See, also, *Knauf & Tesch Co. v. Elkhart Lake Sand & Gravel Co.*, 153 Wis. 306, 141 N. W. 701, 48 L. R. A. (N. S.) 744, note.

The sheriff's certificate vested in Pauline Miller an interest in real property. 3 Freeman, Executions (3d ed.), § 323; *Page v. Rogers*, 31 Cal. 294; *Bank of Greensboro v. Clapp*, 76 N. C. 482; *Greer v. Wintersmith*, 85 Ky. 516, 4 S. W. 232, 7 Am. St. 613; *Pennsylvania, S. V. R. Co. v. Cleary*, 125 Pa. St. 442, 17 Atl. 468, 11 Am. St. 913; 1 Jones, Mortgages (6th ed.), § 476.

Under Rem. Code, § 8745, and the uniform holdings of this court, all contracts creating or evidencing any incumbrance upon real estate must be by deed. Hence the oral agreement upon which respondents' claim is based created no interest in or incumbrance upon the land described in the certificate assigned to appellant.

The judgment is reversed, and the cause remanded with direction to enter a decree adjudging appellant a prior lien on the property described in the mortgage of respondents.

ELLIS, C. J., FULLERTON, MAIN, and PARKER, JJ., concur.